# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 6, 2015


## STATE OF TENNESSEE v. ABRAHAM MEDINA, JR.

**Appeal from the Circuit Court for Madison County**
**No. 13-354     Donald H. Allen, Judge**

_____


**No. W2014-02358-CCA-R3-CD  -  Filed October 16, 2015**
_____


Following a transfer from juvenile court, the Madison County Grand Jury indicted Abraham Medina, Jr. ("the Defendant"), along with five other co-defendants, with three counts of aggravated robbery and one count of evading arrest. The Defendant was tried separately from his co-defendants and convicted as charged. After a sentencing hearing, the trial court sentenced the Defendant to an effective twelve years' incarceration. On appeal, the Defendant argues that (1) the evidence was insufficient to support the Defendant's convictions; (2) the trial court erred when it failed to include a lesser included jury instruction as to facilitation; and (3) the trial court erroneously imposed the maximum sentence. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Joshua B. Dougan (on appeal), Jackson, Tennessee, and Joseph Howell (at trial), Jackson, Tennessee, for the appellant, Abraham Medina, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jerry Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

### *Trial*

On September 30, 2012, three people entered a Dollar General in Jackson, Tennessee, and robbed store employees and patrons at gunpoint. Following the crime, a juvenile petition was filed against the Defendant. On the State's motion, the Defendant was subsequently transferred to criminal court to be tried as an adult. Thereafter, he was indicted with three counts of aggravated robbery and one count of evading arrest.

At trial, Investigator Kenneth Jones of the Jackson Police Department ("JPD") testified that he responded to a report of a robbery at the Dollar General and police pursuit of the suspects' vehicle. Another officer had conducted a stop of the suspects' vehicle, and when Investigator Jones arrived, the vehicle was abandoned and patrol officers were pursuing the suspects on foot. Investigator Jones secured the vehicle, and in doing so, he saw cash register drawers and loaded weapons in plain sight inside the vehicle.

The robbery itself was captured on Dollar General's security camera, and the video was played for the jury. The video showed three individuals enter the Dollar General, one wearing an orange hoodie pulled over his face, one wearing a gas mask, and one wearing a blue bandana over his face. The individual wearing the blue bandana was carrying a gun and pointed the gun at one of the customers in the store. The video shows the individuals leave the store with one of the customers' purses and several cash register drawers. Investigator Jones reported that the purse, along with the cash register drawers, was found in the suspects' vehicle.

On the night of the robbery, Investigator Jones conducted an interview with the Defendant. In that interview, the Defendant gave the following statement:

> We went into the dollar store. We got the money. There were three of us that went inside. I had a gun with me. I pointed my gun at anyone that was inside the store. I had a blue bandana over my face. I do not know the guys' names that were with me. We were in my mother's car. When the police tried to stop us, I jumped out of the car and ran. I was caught by the police. I did not take my gun with me. I did not take my gun out of the car when I got out and ran from the police. I did not take anything from the store. I just ran. I had a semiautomatic handgun. The gun was gray and black. All four of us decided to go and rob this place. We did this to get money. I was getting the money to pay for my own place. We had two

guns with us. We used both guns to rob the store. I was driving the car during this robbery.

On cross-examination, Investigator Jones recalled that there were six suspects in this case and that each of the six individuals had differing levels of involvement in the offense. Investigator Jones was not aware of any fingerprints being taken from the scene.

JPD Officer Charles Crowe testified that, on the night of September 30, 2012, he responded to the report of a robbery at the Dollar General. He arrived at the scene and drove around to the back of the store and saw a silver, two-door car driving toward him, and one of the people in the car was wearing "an orange hoodie or mask." Officer Crowe then began to follow the car, but the car began to pick up speed. Officer Crowe recalled that it was raining and that the car was travelling above the speed limit and faster than was safe in such conditions. At that time, Officer Crowe turned on his blue lights, but the car "took several evasive turns" and made no attempt to slow down. After thirty or forty seconds, the car stopped and "four or five" suspects fled the vehicle, and Officer Crowe pursued them on foot. Officer Crowe apprehended one of the suspects, but it was not the Defendant. When Officer Crowe returned to the suspects' car, he assisted other officers in collecting evidence and found a loaded .380-caliber semiautomatic handgun in the front seat of the car.

A video recorded by the camera in Officer Crowe's police cruiser was played for the jury. The video starts as Officer Crowe follows the vehicle and depicts the suspects' vehicle pick up speed and then stop as the six suspects exit the car and flee on foot. Officer Crowe is then seen chasing one of the suspects on foot.

JPD Officer Michael Byrd arrived at the scene after the suspects had fled on foot, and he began to search for the suspects. Eventually, Officer Byrd discovered a black male and the Defendant hiding behind a shed. Officer Byrd handcuffed both individuals and escorted them back to the police cruiser before returning to the shed to look for evidence. When Officer Byrd returned to the shed, he found a blue bandana near where the Defendant was hiding. Officer Byrd also collected the Defendant's clothes.

Tajia Graves testified that she went to the Dollar General on September 20, 2012, to buy some paper towels. While she was shopping, Ms. Graves heard one of the employees tell "at least three men that [']you can't come in here with those masks on; you're going to have to take those off.[']" Ms. Graves recalled that she had her phone out and was trying to call someone when a man in an orange mask pointed a gun at her and told her to put her phone down. The man in the orange mask then instructed another person in a blue mask to watch Ms. Graves, but the man in the blue mask was busy watching someone else. Ms. Graves also recalled a third person wearing a gas mask. While the three men were distracted, Ms. Graves hid in the frozen food aisle and called

her mother to tell her what was happening. Nothing was taken from Ms. Graves, but Ms. Graves recalled that the cashier's phone was taken and another customer's purse was taken. Ms. Graves estimated that the whole event took less than ten minutes, and she stated that she had "never been that scared in [her] whole life." On cross-examination, Ms. Graves stated that the man in the orange mask was "the main person giving the orders," and she admitted that the man in the orange mask was the only person who interacted with her. The man in the blue mask pointed his gun at Ms. Graves, but he was "more focused on other things that were going on."

Latanya Jones testified that she was standing at the cash register when "four guys" came into the store. She recalled that one person was wearing a gas mask. She also said, "I remember camouflage, an orange toboggan, and a blue bandana" on three other men. The man with the gas mask and the man with the blue bandana had guns. Ms. Jones was carrying a Gucchi purse, which the man wearing the blue bandana took from her. After her purse was taken, Ms. Jones recalled that she got onto the ground and covered her face and the man in the blue bandana pressed a gun into her shoulder blade, leaving a bruise. Ms. Jones did not recall whether the man in the blue bandana said anything to her. However, she stated that the man in the gas mask was the "ringleader." During the robbery, Ms. Jones was in fear and felt helpless. On cross-examination, Ms. Jones admitted that she did not see much of what was happening because she had her face covered.

Lafonda Carter testified that she was the cashier at Dollar General on the night of the robbery. During her shift, three men with masks entered the store. Ms. Carter told them that they could not come into the store with masks on, and then the three men pulled out their guns. One of the men pointed a gun at Ms. Carter. Ms. Carter recalled that one of the men was wearing an orange hoodie and one was wearing a gas mask. As the three men left, one of the men took Ms. Carter's cell phone from her hand while he pointed a gun at her. Ms. Carter was afraid they would kill everyone in the store. On cross-examination, Ms. Carter recalled that one of the men was wearing a bandana over his face. She also recalled that the person in the orange hoodie was telling the store manager what do.

Jeffery Joyner testified that he was the store manager of the Dollar General at the time of the robbery. That night, Mr. Joyner observed a man with a "fluorescent orange mask" come into the store looking suspicious. When Mr. Joyner reached the front of the store, he saw two other men "on the other side of the register that had [the] customers and [the] cashier more or less laid in the floor or down on their knees." However, Mr. Joyner was focused on the man in the orange. The man in orange instructed Mr. Joyner to open the vault and give him the cash register tills inside. While Mr. Joyner was opening the vault, the man in orange held a gun to Mr. Joyner's head. After that, the man in orange

instructed Mr. Joyner to open the cash register, and he took the money inside the register before leaving. Both of the other men in the store had their faces covered with masks. Mr. Joyner reported that he was scared but he knew he had to remain calm in order to keep everyone safe. After the three men left, Mr. Joyner immediately locked the door and called 911. On cross-examination, Mr. Joyner agreed that the man in the orange mask was "calling the shots."

Following deliberation, the jury convicted the Defendant as charged.

*Sentencing*

At a subsequent sentencing hearing, the only proof offered was the presentence report. The State argued that, because the Defendant went into the store, used a gun, and drove the get-away car, he was one of the more culpable actors out of the six people who were present during the robbery. The State also argued that the risk to human life was high. The State asked the trial court to sentence the Defendant near the maximum end of the applicable range of eight to twelve years. The Defendant argued that his young age and lack of substantial judgment was a mitigating factor weighing in his favor. The Defendant also noted that he had no prior criminal record and that he had made a full confession to the crime.

The trial court stated that it had considered the evidence presented at trial, the presentence report, and the principles of sentencing. The court noted that, because the Defendant had been convicted of aggravated robbery, he was not eligible for any type of alternative sentence. The trial court considered the Defendant's statement in the presentence report wherein he admitted to his involvement in the aggravated robbery and expressed remorse for his actions. The trial court also stated that it had considered the Defendant's potential for rehabilitation and potential treatment. As to enhancement factors, the trial court found that the Defendant was a leader in the commission of an offense involving two or more criminal actors based on the fact that others involved in the crime remained in the car while the Defendant entered the store and the Defendant drove the get-away car. The trial court also found that the Defendant committed the crimes to gratify his desire for pleasure or excitement and that the Defendant had no hesitation about committing a crime when the risk to human life was high. As to mitigating factors, the trial court gave "very slight weight" to the fact that the Defendant was young when he committed the offenses. The court noted that the Defendant had no prior criminal record and that he had earned As, Bs, and Cs in school. In the end, the trial court found that the enhancement factors "certainly outweigh[ed] any mitigation" and sentenced the Defendant to concurrent sentences of twelve years for each of the aggravated robbery convictions and two years for the evading arrest conviction, for an effective twelve years' incarceration.

The Defendant filed a motion for new trial, which was denied. This timely appeal followed.

## Analysis

### *Sufficiency of the Evidence*

The Defendant argues that the evidence was insufficient to support his convictions because there was a "lack of evidence establishing [the Defendant] as the person wearing the blue bandana." The Defendant contends that "the only connection" between him and the blue bandana was the fact that it was found near where he was hiding along with one other suspect when they were arrested by the police. He claims that such connection was not sufficient to allow the jury to conclude that the Defendant had entered the Dollar General and participated in the robbery.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978), superseded on other grounds by Tenn. R. Crim. P. 33 as stated in State v. Moats, 906 S.W.2d 431, 434 n.1 (Tenn. 1995). This court will not reweigh the evidence. Id. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. Bland, 958 S.W.2d at 659; Tuggle, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007).

The identity of the perpetrator is "an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006). Identity may be established with circumstantial evidence alone, and the "jury decides the weight to be given to circumstantial evidence, and [t]he inferences to be drawn from such evidence . . . ." Id. (internal quotation marks omitted). The question of identity is a question of fact left to the trier of fact to resolve. State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2010). As charged in the indictment, aggravated robbery is "robbery as defined in § 39-13-401. . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402(a)(1) (2010). The statute for evading arrest, as charged in the indictment, states, "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1) (2010).

In this case, a blue bandana was found near where the Defendant and another suspect were hiding when they were arrested. Additionally, the Defendant admitted in his statement that he entered the Dollar General with two other individuals in order to steal money; that he was carrying a semi-automatic handgun at that time; that he pointed the gun at "anyone that was inside the store"; and that he was wearing a blue bandana over his face. The victims testified that they were afraid during the robbery. The Defendant also admitted that he was driving the get-away car. Officer Crowe's testimony and video from Officer Crowe's police cruiser show that the Defendant picked up speed and made several evasive turns after Officer Crowe activated his blue lights to signal the Defendant to pull over. Also, once the Defendant stopped the car, he ran from the police and hid. There was sufficient evidence to support the Defendant's convictions for aggravated robbery and evading arrest.

*Facilitation Instruction*

Next, the Defendant argues that the trial court erred when it failed to instruct the jury as to the lesser included offense of facilitation of aggravated robbery. He claims that "the only proof by which the jury could have inferred [the Defendant's] presence inside the store was the blue bandana found near the spot where he and one other person were found" and that, had the trial court instructed the jury on the offense of facilitation of aggravated robbery, the jury could have convicted the Defendant of that offense "due to the lack of proof establishing the Defendant's presence inside the store." The State argues that the Defendant has waived our consideration of this issue because he failed to submit a written request for a jury instruction on facilitation and failed to include the jury instructions in the record on appeal. In the alternative, the State argues that the trial court properly declined to instruct the jury on facilitation because the facts did not warrant such an instruction.

At the conclusion of proof, the Defendant orally requested the court to "consider a facilitation charge" as to the three counts of aggravated robbery. The trial court declined to instruct the jury on facilitation because the proof indicated that the Defendant was one

of the individuals who actually participated in the robbery inside the Dollar General store as opposed to one of the people who simply sat in the car while the robbery took place.

"For all trials conducted on or after January 1, 2002, the defendant must file a written request for an instruction on a lesser-included offense as a prerequisite to taking issue on appeal with the failure to give an instruction on the offense." State v. Banks, 271 S.W.3d 90, 126 (Tenn. 2008) (citing Tenn. Code Ann. § 40-18-110(c)). Failure to submit a written request will result in waiver of the issue on appeal. Id. However, because criminal defendants have a constitutional right to a correct and complete charge of the law applicable to their case, this court may review the instructions to determine whether the defendant is entitled to relief under plain error review. Id. (citing State v. Page, 184 S.W.3d 223, 229 (Tenn. 2006)).

This court will grant relief under plain error review only when five prerequisites are met: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting the factors set out in State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The defendant bears the burden of demonstrating that the trial court committed plain error. State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007). Further, "consideration of all five factors is not necessary when it is clear from the record that at least one of them cannot be satisfied." Id. (citing Smith, 24 S.W.3d at 283).

When addressing whether a trial court erred in failing to instruct the jury on a lesser included offense, this court considers the following three questions: (1) whether the offense is a lesser included offense; (2) whether the evidence supports a lesser included offense instruction; and (3) whether the failure to give the instruction is harmless error. Banks, 271 S.W.3d at 124 (citing State v. Allen, 69 S.W.3d 181, 187 (Tenn. 2002)).

As relevant here, "An offense is a lesser included offense if: (1) [a]ll of its statutory elements are included within the statutory elements of the offense charged; [or] (2) the offense is facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1)[.]" Tenn. Code Ann. § 40-18-110(f)(1)-(2) (Supp. 2011). Accordingly, facilitation of aggravated robbery is a lesser included offense of aggravated robbery. See Tenn. Code Ann. § 40-18-110(f)(2) (Supp. 2011). Tennessee Code Annotated section 39-11-403(a) (2010) states, "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required from criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony."

Tennessee Code Annotated section 40-18-110(a) (Supp. 2011) provides the standard for determining whether the evidence is sufficient to require an instruction on a lesser included offense, stating:

> . . . [T]he trial judge shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

However, our supreme court has stated that instructions as to the lesser included offenses of facilitation, attempt, and solicitation are not necessary "where the evidence clearly establishes completion of the criminal act or simply does not involve proof of solicitation or facilitation." Banks, 271 S.W.3d at 125 (footnote omitted); see also Allen, 69 S.W.3d at 188 (stating that proof of the greater offense will not necessarily prove a lesser included offense of facilitation, attempt, or solicitation); State v. Ely, 48 S.W.3d 710, 719 (Tenn. 2001).

In this case, the Defendant gave a statement to police in which he admitted that he went inside the Dollar General store carrying a gun, participated in the robbery in order to get money to "pay for [his] own place," and wore a blue bandana over his face. Further, Ms. Jones testified that the individual wearing the blue bandana took her purse from her and pressed a gun against her shoulder blade. There is no proof in the record which indicates that the Defendant merely "furnishe[d] substantial assistance in the commission of [aggravated robbery]" without possessing the intent to "promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense[.]" See Tenn. Code Ann. §§ 39-11-403(a), 39-11-402(2) (2010). Accordingly, the evidence clearly established that the Defendant was an active participant in the aggravated robberies and did not merely facilitate them. A jury instruction on facilitation was not necessary. See Banks, 271 S.W.3d at 125. Therefore, the Defendant has failed to demonstrate that a clear and unequivocal rule of law was breached or that one of his substantial rights was adversely affected, and he is not entitled to relief under plain error review. See Smith, 24 S.W.3d at 282-83.

Additionally, we note that the Defendant has failed to include a copy of the jury instructions as part of the record on this appeal. It is the Defendant's burden "to have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). Without the jury

instructions, we have no way to determine whether the trial court, in fact, did not instruct the jury as to facilitation, and the record does not "clearly establish what occurred in the trial court." Accordingly, even if we believed the proof entitled the Defendant to an instruction on facilitation, we would not be able to grant relief under plain error review. See Smith, 24 S.W.3d at 282-83.

*Sentencing*

The Defendant argues that the trial court "ran afoul of the sentencing principles" when it imposed the maximum sentence for each of the Defendant's convictions. The Defendant supports his claim by citing to the confinement considerations in Tennessee Code Annotated section 40-35-103(1), arguing that the length of his confinement did not protect society from a person with a "long history of criminal conduct" because he had no prior criminal record and that measures less restrictive had never been applied unsuccessfully to the Defendant. Further, the Defendant contends that the trial court failed to consider his potential or lack thereof for rehabilitation, pointing to his consistent good grades, good health, and lack of drug use as "factors weighing in favor of mitigation."

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. Bise, 380 S.W.3d at 707. "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing determination." Id. at 709. Moreover, under those circumstances, this court may not disturb the sentence even if it had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in

Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing.  See Tenn. Code Ann. § 40-35-210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).  The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed.  Tenn. Code Ann. § 40-35-103 (2010).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen.  Tenn. Code Ann. § 40-35-210(e) (2010); Bise, 380 S.W.3d at 706.  However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]."  Bise, 380 S.W.3d at 705-06.  The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper.  Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.

In this case, the trial court explicitly stated that it had considered the principles and purposes of sentencing as well as the evidence presented at trial, the presentence report, and the Defendant's potential for rehabilitation and treatment.  Further, the trial court made specific findings about enhancement and mitigating factors and assigned weight to each factor, placing its reasoning on the record.  The trial court correctly noted that, because the Defendant was convicted of aggravated robbery, he was not eligible for alternative sentencing for those offenses.  Tenn. Code Ann. § 40-35-303(a) (2010) (no defendant convicted of aggravated robbery is eligible for probation under the Sentencing Act of 1989); see also Tenn. Code Ann. § 40-36-106(a)(1)(B) (2010) (defendants convicted of crimes against the person are not eligible for a sentence to community corrections).  Finally, the trial court ordered concurrent sentences, thereby reducing the Defendant's total incarceration time.  Based on the record before us, we do not believe the trial court "ran afoul of the sentencing principles."  The trial court did not abuse its discretion when it sentenced the Defendant to an effective twelve years' incarceration.

## Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE